NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**THEODORE W. MAKSE,**
*Petitioner,*

v.

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent.*

---

2010-3156

---

Petition for review of the Merit Systems Protection Board in Case No. CH0831090779-I-1.

---

Decided: January 14, 2011

---

THEODORE W. MAKSE, of Mentor, Ohio, pro se.

RICHARD P. SCHROEDER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director. Of Counsel on the brief was JESSICA S. JOHNSON, Office of General Counsel, Office of Personnel Management, of Washington, DC.

---

Before LOURIE, BRYSON, and PROST, *Circuit Judges*.

PER CURIAM.

Theodore Makse appeals from the decision of the Merit Systems Protection Board ("the Board") affirming the Office of Personnel Management's ("OPM's") calculation of his retirement annuity. *See Makse v. Office of Pers. Mgmt.*, No. CH-0831-09-0779-I-1 (M.S.P.B. Nov. 12, 2009) ("*Initial Decision*"); *Makse v. Office of Pers. Mgmt.*, No. CH-0831-09-0779-I-1, 113 M.S.P.R. 303 (M.S.P.B. Feb. 5, 2010) ("*Final Order*").

For the reasons discussed below, we affirm.

## BACKGROUND

Makse began his federal civil service in 1971 at the Veterans Affairs Medical Center ("VAMC"). In 1981, he sustained an on-the-job injury and began receiving benefits, pursuant to the Federal Employees' Compensation Act ("FECA"), from the Office of Workers' Compensation Programs ("OWCP"). Makse resigned from his position as a Utility Systems Repairer-Operator in 1985 and chose to receive a refund of the retirement contributions he had made up until that time. In 1996, he was rehired by the VAMC as a part-time Food Service Worker.

Makse was working as a Security Clerk at the VAMC when he retired from federal civil service in January 2008. At that time, he had the option of electing to receive Civil Service Retirement System ("CSRS") annuity benefits or continuing to receive OWCP benefits for his prior injury. He chose to receive the OWCP benefits. As a result, his CSRS annuity was suspended.

After his retirement, however, Makse requested and received a computation of his CSRS annuity from OPM,

which reflected the annuity he would receive were he to choose to decline the OWCP benefits and unsuspend the payment of his annuity. Being dissatisfied with OPM's computation, he requested reconsideration of his CSRS benefits, specifically requesting that the annuity be recalculated based upon rates he would have received had he continued to work as a utility systems repairer-operator until his retirement. Thus, Makse requested that his CSRS benefits be calculated based on the 2006-08 salary for a WG-11, Step-05, employee instead of the rates that were in effect at the time he held that position. The OPM issued a letter to Makse explaining the basis on which it calculated his annuity. In addition, the letter explained his options in repaying the retirement contributions he had withdrawn in 1985, upon leaving his position as a utility systems repairer-operator. OPM further informed him that he had been overpaid for an interim payment and demanded repayment. In sum, the OPM denied Makse's request for reconsideration of its first calculation and demanded he repay OPM $712. He appealed to the Board.

The Board assumed jurisdiction of the appeal pursuant to 5 U.S.C. §§ 7701(a) and 8347(d), on the ground that OPM's calculation constituted an administrative action affecting Makse's rights or interests. During the course of the proceedings before the administrative judge ("AJ"), issues relating to Makse's repayment of the retirement funds, with interest, that he had taken as a distribution in 1985 were resolved. In addition, the parties agreed that for purposes of calculating the length of his service, Makse is entitled to full-time credit for all periods in which he received OWCP benefits for hours exceeding those he was able to work. Accordingly, those issues are not before us.

In determining the appropriate annuity to which Makse is entitled, the AJ explained that "[f]or purposes of computing a CSRS annuity under 5 U.S.C. § 8339(a), 'average pay' is defined as 'the largest annual rate resulting from averaging an employee's rates of basic pay *in effect* over any [three] consecutive years of creditable service.'" *Initial Decision* at 4 (citing 5 U.S.C. § 8331(4)) (emphasis added). The AJ then held that the words "in effect" in the statute limited the pay rates to the applicable rates "at the time an employee was receiving pay at a particular grade." *Id.* Thus, it was Makse's pay at the time he earned it that formed the basis for the high-three calculation, not the pay rate in effect for a WG-11, Step-05, employee in the three years preceding his retirement. Makse petitioned for review by the full Board.

The Board denied Makse's petition, concluding that there was no new, previously unavailable evidence and that the AJ made no error of law that affected the outcome. The AJ's initial decision thereupon became the final decision of the Board.

Makse timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

### DISCUSSION

The scope of our review in an appeal from a Board decision is limited. We can set aside the Board's decision only if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003).

The Board had jurisdiction of this matter because OPM's ruling affected Makse's rights and interests. 5

U.S.C. § 8347(d)(1). In particular, although his CSRS benefits were suspended, the rate that was calculated was the rate applicable to him if he chose to accept it; it is the rate that will be applied if he elects not to receive OWCP distributions in the future or if those distributions are halted for any reason. His right in the annuity apparently continues, even though he currently elects not to receive that benefit in order to receive another, greater, benefit to which he is entitled.

Makse argues that OPM misapplied the high-three rule, which dictates that retirement benefits are derived from averaging a retiree's salary in three consecutive years of creditable service—those years in which the retiree earned his highest salary. Specifically, Makse argues that OPM's calculations are in conflict with FECA, which states that an employee should not be prejudiced based on an injury received on the job. Makse also argues that OPM's calculations are in conflict with the OWCP. Makse requests that we reverse the Board's decision and implement a rule or guidelines allowing cost of living increases to be included in retirement calculations, to ensure that injured workers do not suffer a loss in retirement benefits.

The government responds that Makse has not demonstrated that the rules, regulations, or statutory provisions used for calculating FECA benefits apply to the calculation of potential CSRS benefits. The government notes that FECA benefits are governed by chapter 81, title 5, of the United States Code, whereas CSRS benefits are governed by chapter 83 of that title. The government further explains that while the statute and its implementing regulation do suggest that federal employees injured on the job should not incur a loss of benefits they would have received if not for the injury, that language is limited to situations in which employees take temporary

leave as a result of their injuries and then return to work. Lastly, the government notes that cost of living adjustments are factored into OWCP benefits, such as those Makse has chosen to receive.

We affirm the Board's decision interpreting and applying 5 U.S.C. § 8331(4) in determining Makse's annuity payments pursuant to 5 U.S.C. § 8339(a). Section 8331(4) defines "average pay," which is used to calculate an annuity payment, as "the largest annual rate resulting from averaging an employee's . . . rates of basic pay in effect over any 3 consecutive years of creditable service . . . ." 5 U.S.C. § 8331(4). The Board correctly concluded that the words "in effect" mean that average pay is determined by averaging three years of salary rates as they existed in the years the employee held a position. The "in effect" language does not encompass calculation of average pay over years in which an employee has not served in a particular position.

The statute also does not reference FECA, and there is no reason to read in a section of FECA to interpret the clear language of § 8331. Nor does § 8151 of FECA and its implementing regulation provide a different answer. That section provides in relevant part that "[i]n the event the individual resumes employment with the Federal Government, the entire time during which the employee was receiving compensation under this chapter shall be credited to the employee for the purposes of within-grade step increases, retention purposes, and other rights and benefits based upon length of service." 5 U.S.C. § 8151(a). However, as we held in *True v. Office of Personnel Management*, 926 F.2d 1151, 1155 (Fed. Cir. 1991), the plain language and legislative history of that provision indicate that it does not apply to annuity computation under the civil service retirement provisions. We therefore decline

to read language from FECA into the sections governing calculation of CSRS benefits.

CONCLUSION

The Board affirmed OPM's calculation of retirement benefits based on a correct interpretation and application of the law. Accordingly, we affirm the Board's decision in favor of the government.

**AFFIRMED**

COSTS

No costs.